Filed 1/4/23  P. v. Mateos CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JUAN MATEOS, JR.,<br><br>        Defendant and Appellant. | C095620<br><br>(Super. Ct. No. STKCRFECOD20150007171) |

Defendant Juan Mateos, Jr., was originally sentenced to life with the possibility of parole for attempted premeditated murder, plus a consecutive 20 years for an attached firearm enhancement, with other firearm enhancements imposed and stayed.  This court affirmed his convictions but remanded for resentencing on multiple firearm enhancements.  Upon remand, the trial court struck two firearm enhancements, including the 20-year enhancement previously imposed, lifted the stay on a third firearm enhancement, and imposed a consecutive low term of three years for that enhancement.

1

Defendant appeals for the second time, arguing that newly enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) (Senate Bill 81), which amended Penal Code section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements in the interest of justice, required the trial court to strike the three-year firearm enhancement. (Statutory section citations that follow are found in the Penal Code unless otherwise stated.)

We note that a subsequent enactment, Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), which took effect on June 30, 2022, made technical, nonsubstantive changes to section 1385 that do not affect the issues on appeal.

We disagree with defendant's arguments and affirm the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

In 2017, a jury found defendant guilty of attempted premeditated murder. (§§ 664, 187, subd. (a).) The jury also found several firearm enhancements true, including that during the offense, defendant intentionally and personally discharged a firearm (§ 12022.53, subd. (c)), personally used a firearm (§ 12022.53, subd. (b)), and used a firearm (§ 12022.5, subd. (a)).

At the initial sentencing hearing, the trial court imposed a life sentence plus 20 years for the intentional and personal discharge of a firearm enhancement (§ 12022.53, subd. (c)), and imposed and stayed 10-year terms for each of the remaining firearm enhancements. This court affirmed defendant's convictions, but remanded for the trial court to consider its newfound discretion to strike the firearm enhancements under Senate Bill No. 620 (2017-2018 Reg. Sess.). (*People v. Mateos* (Nov. 20, 2020, C085250) [nonpub. opn.].)

Defendant was resentenced in January 2022. At the hearing, defendant argued Senate Bill 81 mandated dismissal of all three firearm enhancements, and that even if dismissal was not required, the court should nevertheless exercise its discretion to strike

2

the firearm enhancements. According to defense counsel, striking the firearm enhancements was mandatory under Senate Bill 81 because each of the enhancements could result in a sentence of over 20 years.

The trial court rejected defendant's Senate Bill 81 argument, stating, "That's not my reading of the new law. His underlying crime puts him over the 20-year mark, so that one doesn't apply." After considering defendant's youthfulness, upbringing, criminal history, substance abuse, and his testimony at trial, which the court found credible, the court struck the 20-year term for the intentional and personal discharge of a firearm enhancement (§ 12022.53, subd. (c)) in the interests of justice. The court also struck the 10-year section 12022.53, subdivision (b) firearm enhancement, which it had previously imposed and stayed. The court lifted the stay on the section 12022.5, subdivision (a) firearm enhancement, and imposed a consecutive low term of three years for the enhancement given defendant's youthfulness when he committed the crime. Defendant timely appealed.

DISCUSSION

Defendant contends the trial court erred in determining Senate Bill 81 did not require it to strike the section 12022.5, subdivision (a) firearm enhancement. He argues that Senate Bill 81 mandates dismissal of the three-year enhancement because it "could result" in a total sentence of more than 20 years when considered together with his consecutive life term. This argument is not meritorious.

I

*Standard of Review*

We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374.) A trial court may abuse its discretion where "its decision is so irrational or arbitrary that no reasonable person could agree with it," " 'where the trial

3

court was not "aware of its discretion" ' " to dismiss a sentencing allegation under section 1385, or "where the court considered impermissible factors in declining to dismiss." (*Carmony*, at pp. 377-378.)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to strike a [sentencing] allegation without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony, supra*, 33 Cal.4th at p. 377.) Thus, whether the trial court in this case abused its discretion depends on the scope of that discretion under section 1385. We review this question of statutory interpretation de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

## II

### *Senate Bill 81 and Amended Section 1385*

Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) As amended, section 1385, subdivision (c) now provides in relevant part:

"(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶]

4

"(C)  The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."  (§ 1385, subd. (c)(1)-(2).)

It is this mitigating circumstance--whether the application of the three-year enhancement could result in a sentence of over 20 years--that is at issue here.  We turn now to that question of interpretation.

The rules governing statutory construction are well established.  Fundamentally, the objective of statutory interpretation is to ascertain and effectuate legislative intent.  (*People v. Flores* (2003) 30 Cal.4th 1059, 1063; *People v. Trevino* (2001) 26 Cal.4th 237, 240.)  "To determine legislative intent, we turn first, to the words of the statute, giving them their usual and ordinary meaning."  (*Flores*, at p. 1063.)  When the language of a statute is clear and unambiguous, a reviewing court need go no further.  (*Ibid.*)  But when the statutory "language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."  (*Ibid.*)

Here, defendant focuses on the plain meaning of the words "could result" as used in section 1385, subdivision (c)(2)(C) to argue that if there is a "possibility" of a term longer than 20 years, a trial court must dismiss an enhancement.  (See, e.g., https://perma.cc/4GMP-6LUF (Dec. 8, 2022) ["could" is ordinarily used to indicate a possibility, even if slight or uncertain].)  In his view, adding a three-year term to his indeterminate life sentence, of which he must serve at least seven years before becoming eligible for parole (§ 3046, subds. (a)-(b)), creates a *possibility* that his sentence will exceed 20 years, and, therefore, the court erred in determining section 1385, subdivision (c)(2)(C) did not apply.

The problem with defendant's interpretation is that it would preclude imposition of *all* enhancements to *any* indeterminate life term.  If that is what the Legislature intended, it does not appear on the face of the amended statute.

And nothing in the legislative history of Senate Bill 81 suggests the Legislature intended to preclude a trial court from imposing an enhancement on an indeterminate term under any circumstance. To the contrary, the legislative history of Senate Bill 81 reveals the Legislature intended to provide guidance to trial courts for when to exercise discretion to strike an enhancement, but not that it intended to deprive the courts of the ability to impose an enhancement when warranted in the interests of justice. (See, e.g., Sen. Rules Com. Bill Analysis (Aug. 30, 2021) at p. 1 ["This bill provides guidance to courts by specifying circumstances for a court to consider when determining whether to apply an enhancement"]; Assem. Com. on Public Safety Bill Analysis (June 29, 2021) at p. 3 [noting author's statement that Senate Bill 81 was intended to clarify parameters for imposing enhancements for the purpose of improving fairness in sentencing while retaining a judge's authority to apply an enhancement to protect public safety].)

Notably, Senate Bill 81 was based on a recommendation from the Committee on Revision of the Penal Code. (Assem. Com. on Public Safety Bill Analysis (June 29, 2021) at p. 4.) That committee recommended that "judges should retain authority to impose sentence enhancements in appropriate cases," including to protect public safety. (*Ibid.*) Interpreting section 1385 to strip judges of that authority as it relates to indeterminate sentences, as defendant's interpretation essentially does, runs contrary to the recommendation upon which Senate Bill 81 was based.

While we do not quarrel with the plain meaning of the word "could," we find defendant's urged interpretation fails to properly consider that word in the context of the statute as a whole. " '[W]e cannot read the words of a statute in isolation, ignoring their context. We must read a statute as a whole and attempt to harmonize its elements by considering each clause or section in the context of the overall statutory framework. [Citation.] We are obligated to select the construction that comports most closely with the apparent intent of the Legislature, to promote rather than defeat the statute's general purpose and to avoid an interpretation that would lead to absurd and unintended

6

consequences.' " (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 46.)

These rules of statutory construction lead us to consider the broader meaning of whether it is "*the application of*" defendant's three-year enhancement that could lead to a sentence of over 20 years. Under statutory authority that existed when the Legislature passed Senate Bill 81, we think not.

As the People correctly point out, defendant was sentenced to life with the possibility of parole for the attempted premeditated murder conviction and three consecutive years for the firearm enhancement. Section 669 provides that, "[w]henever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole." (§ 669, subd. (a).) Thus, because defendant must serve the three-year firearm enhancement *before* beginning his indeterminate term, all years served after completion of the firearm enhancement will be based on defendant's life sentence, not *application of* the enhancement. Any sentence length beyond 20 years, therefore, would not result from the three-year firearm enhancement but rather would result from the life sentence itself. We presume that the Legislature was aware of section 669 when it passed Senate Bill 81 amending section 1385. (*People v. Overstreet* (1986) 42 Cal.3d 891, 897 ["the Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes ' "in the light of such decisions as have a direct bearing upon them" ' "].)

Senate Bill 81 did not mandate that the trial court dismiss the three-year firearm enhancement. Accordingly, the court did not err in imposing the enhancement.

DISPOSITION

The judgment is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

HOCH, J.*

_____

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8